UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOHN C. PIPES,

        Plaintiff,

  v.

ASPEN NATIONAL FINANCIAL, INC. and TRANS UNION, LLC,

        Defendants.

Case No. 2:24-cv-02170-MMD-EJY

**ORDER**

Pending before the Court is Defendant Trans Union, LLC's Motion to Enforce Settlement Agreement. ECF No. 38. The Court considered the Motion, Opposition (ECF No. 45), and Reply (ECF No. 47).

**I.    Background**

A review of the parties' communications relating to whether a settlement was reached include the following:

- At 12:33 p.m., on September 29, 2025, counsel for Plaintiff sent in-house counsel for Trans Union an email stating: "Terri, following up on the Pipes matter as we have a deposition set for this Thursday. As you know both sides' fees and costs will increase after that day. I am sure we would both like to avoid that. I sent you an offer on _____ … [the] 24th. Please let me know." The email was signed by Gustavo Ponce, counsel for Plaintiff.

- At 12:58 p.m. in-house counsel for Trans Union, Terri R. Brown, responded: "In *Pipes*, I can get you $___ plus the standard terms we typically agree to. That's a take it or leave it number. This matter is with outside counsel so I'm not going to go back and forth with facts but from what I understand (not having worked on this matter until you recently reached out) this matter is very close to being Rule 11. In _____, I can offer $___ and standard terms."

- On September 30, 2025, at 7:32 a.m., Ms. Brown emailed Mr. Ponce again. This time, Ms. Brown asked Mr. Ponce: "Does Plaintiff have a response in each of the matters outlined below? Please let me know since, as you mentioned, there is a deposition this week in *Pipes*."

- At 3:30 p.m. on September 30, 2025, Mr. Ponce emailed Ms. Brown and stated: "You have a deal re Pipes. Will you inform local counsel of this."

- At 3:33 p.m. on September 30, 2025, Ms. Brown "Confirmed settled at ___ in Pipes. I will let local counsel know. Can you provide a counter in ___? I think we can get that one done as well."

1

ECF No. 38-1 at 6-8 (deletions in original).

There appears to be no dispute that after the above exchange, counsel for Trans Union prepared a settlement agreement that was emailed to Mr. Ponce (Plaintiff's counsel) on October 3, 2025. ECF No. 38-2 at 7.[1] At 8:01 p.m. on October 6, 2025, Plaintiff's counsel emailed Trans Union counsel (Sarah Irish with QSLWM) stating: "Counsel attached is the edited agreement, [sic] Most of the edits are based off previous agreements. The exhibit is highlighted in yellow as we haven't [sic] reviewed it with our client until the end. Can you also send us the exhibit by itself." *Id*. 2 at 9. On Friday, October 10, 2025, at 12:10 p.m. Ms. Irish emailed Mr. Ponce stating: "*We have accepted the edits to the Settlement Agreement*. Per your request, please see the attached secure link containing the credit disclosure. Please note the link will expire in 30 days and is only accessible by direct recipient." *Id*. at 11 (emphasis added). At 12:16 p.m. on October 10th, the link to the credit file was sent to Plaintiff's counsel. ECF No. 13. There are no discussions between the parties regarding settlement terms or the credit file subsequent to the emails containing the settlement agreement with all of Plaintiff's changes accepted. ECF No2. 38-1, 38-2. There are no communications regarding the credit file after it was sent to Plaintiff's counsel.[2] *Id*.

Thereafter, counsel for Trans Union asked Plaintiff's counsel to send over a Notice of Settlement that could be filed the same today, if possible. *Id*. at 15 sent on October 16, 2025 at 8:56 a.m. On November 7, 2025, counsel for Trans Union, Ms. Loughmiller, sent an email to her co-worker and Mr. Ponce stating: "Gustavo: Please send the executed settlement agreement back. I don't see that we have receive [sic] it yet. Please also file a Notice of Settlement if you haven't already. Thank you." *Id*. at 17.

Plaintiff does not take issue with the history recounted above. ECF No. 45. Instead, Plaintiff says that on September 30, 2025, Trans Union referenced "'standard terms we typically agree to'

---

[1]    The email, ECF No. 38-2 at 7, shows the settlement agreement was sent as October 3, 2025 at 4:50 p.m. The subject matter of the email is identified as "FW: Pipes, John – SAR" and includes an attachment titled "Pipes, John, C. (2) – Confidential Settlement and Release Agreement.pdf." *Id*. The content states: "Gustavo, Attached please find SAR for your review. I will send the password in a separate email. Once we get the W-9s we will request the settlement check." *Id*. This email is from Amanda Loughmiller, a shareholder in  the firm representing Trans Union (Quilling Selander Lownds Winslett & Moser ("QSLWM")). *Id*.

[2]    Plaintiff contends there were ongoing negotiations but offers no document or declaration supporting this bald statement. ECF No. 45.

without stating what those terms actually were" and that no settlement agreement was attached to the email. *Id*. at 3. Yet, in response to Trans Union's email referencing "standard terms," Plaintiff's counsel stated the parties "have a deal re Pipes." ECF No. 38-1 at 6. No qualification or condition on the acceptance of the agreed upon deal was stated. *Id*. Three minutes later, Trans Union's counsel wrote back stating "Confirmed settlement at $____ in Pipes." *Id.* Plaintiff does not refute this statement. Thus, Plaintiff accepted the settlement offer that included "standard terms" to which the parties typically agreed; and Plaintiff does not state or suggest that when counsel received the settlement agreement on October 3, 2025, and returned it with edits "based off previous agreements" there was any material term in dispute. ECF No. 38-2 at 9. All of Plaintiff's edits were accepted on October 10, 2025. *Id*. at 11. There is no evidence that as of October 10, 2025 there were any material terms being negotiated or in dispute. ECF Nos. 38-2, 45, *generally*.

Plaintiff nonetheless complains that the credit file, apparently Exhibit A to the settlement agreement, was not received on October 3, 2025. This complaint is undermined by Plaintiff's admission that the file was received on October 10, 2025 (ECF No. 45 at 3) and that Plaintiff's counsel fails to identify any issue with the contents of that file or offer any evidence of communications supporting the conclusion that a problem with the file ever existed. *Id*., *generally*. Said simply, Plaintiff offers no evidence of communication after receipt of the settlement agreement and credit file indicating there was any disagreement regarding the material terms of the settlement.

**II.     Discussion**

        a.     Overview of Applicable Law.

There is no dispute that the issue presented—whether there is an enforceable settlement between the parties—is governed by Nevada law. The Nevada Supreme Court outlines that a valid and enforceable settlement agreement requires "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Protection, Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 254 (Nev. 2012). "Which terms are essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Id*. at 255 (internal quotation marks and citation omitted).

The law in Nevada also presumes that an attorney has authority to settle his client's claim. *Edwards v. Babcock*, 238 P.3d 808 (Table), 2008 WL 6096449, at *2 (Nev. Nov. 3, 2008), *citing Waits v. Weller*, 653 F.2d 1288, 1290 n.2 (9th Cir. 1981) (stating that under Nevada law, an attorney is presumed to have authority to settle his client's claim). Although that presumption may be overcome by proof that the attorney did not have authority, the proof discussed below is contrary to this conclusion.

        b.    <u>Plaintiff Does Not Overcome the Presumption that His Counsel Had the Authority to Settle his Claim.</u>

Ignoring the law holding there is a presumption that attorneys in Nevada have authority to settle claims on behalf of their clients, Plaintiff argues general agency principals. ECF No. 45 at 10. Indeed, counsel for Plaintiff argues that his communications with Trans Union show the settlement "was expressly subject to Plaintiff's review and approval." *Id*. at 6. While counsel for Plaintiff says that his client did not give him authority to accept or approve a final written release, the evidence is to the contrary. Again, counsel's statement to Trans Union that "[y]ou have a deal re Pipes" says nothing more. ECF No. 38-1 at 6. There is no evidence suggesting, let alone demonstrating, this statement was conditioned on or subject to approval of counsel's client. *Id*.; ECF No. 38-2. On October 6th when counsel for Plaintiff sent the settlement agreement back to Trans Union with "edits based off previous agreement," counsel said only that Exhibit A had not been reviewed with his client—not that the "deal" was no longer in effect or that counsel was otherwise waiting on approval from Plaintiff to approve settlement terms. ECF No. 38-2 at 9. In sum, no communication exists supporting the contention Plaintiff repeatedly asserts that Trans Union knew that settlement was contingent on Plaintiff's approval. Moreover, the Declaration of Trans Union's counsel belies this contention. That is, Trans Union states that subsequent to a Motion to Withdraw filed by Plaintiff's counsel, counsel for Plaintiff and Trans Union spoke by phone at which time Plaintiff's counsel confirmed he had authority to settle on behalf of his client. ECF No. 47 at 7 *citing* Loughmiller Declaration at ECF No. 47-1 ¶ 6.[3]

---

[3] The Moton to Withdraw as Counsel for Plaintiff was filed before the Motion to Enforce Settlement was filed by Trans Union. ECF Nos. 35, 38. The Motion to Withdraw notes "irreconcilable difference," "a fundamental breakdown in the attorney-client relationship, and a complete loss of trust" had developed between Plaintiff and counsel.

Regarding the argument that Plaintiff's counsel had not received the "standard terms" when he accepted the "deal" on behalf of his client falls flat. First, at the risk of redundancy, the acceptance of the deal was not stated to be contingent on receipt of the standard terms. ECF No. 38-1 at 6. Second, counsel for Plaintiff and Trans Union have entered into 97 previous agreements with the same standard terms that were included in the instant settlement agreement. ECF No. 47-1 ¶¶ 2, 3 (Declaration of Amanda Loughmiller stating, in pertinent part, that "Plaintiff's counsel's … has settled ninety-seven cases with Trans Union in the last ten years" and "[t]he material terms of settlement in all ninety-seven cases were the same as the material terms that Plaintiff agreed to in the current matter."). Third, Plaintiff's counsel accepted the "deal" *after* Trans Union stated the settlement would include a payment and "standard terms" evidencing knowledge of those terms. Fourth, counsel for Plaintiff never mentions those terms in communications after the settlement agreement was emailed on October 3, 2025. ECF No. 38-2.

In *Walter v. Western Industries, Inc.*, Case No. SACV 13-1503-JLS (ANx), 2015 WL 12765552 (C.D. Cal. Mar. 25, 2015), the District Court, albeit citing California law, stated: "[t]he existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." *Id*. at *3 (internal citation omitted). In that case, the court found an offer was accepted by the plaintiff when his counsel stated "Plaintiff will settle at $27,500 as to Victor ONLY." *Id*. The court in *Walter* found it was clear, based on the exchange cited, that the "parties entered into a settlement agreement" that was enforceable. *Id*.

Here, as in *Walter*, Trans Union made an offer and an unconditional acceptance was given. ECF No. 38-1 at 6-7. The Court finds the argument that counsel for Plaintiff did not have authority to accept the settlement is unavailing. Plaintiff has not overcome the presumption that his counsel had authority to settle his claim.

---

ECF No. 35 at 2. The details underlying these statements were not provided. *Id*., *generally*. At a hearing regarding the Motion to Withdraw, Plaintiff's counsel indicated this breakdown pertained to the settlement. ECF No. 46.

      c.      <u>There is No Evidence of Disputed Material Terms</u>.

Plaintiff repeatedly alleges there was a failure to agree on material terms.  However, there are no communications between the parties identifying a single disputed term and Plaintiff's Opposition identifies none.  ECF Nos. 38-1, 38-2, 45, *generally*.  The history of the parties' working relationship over ten years strongly supports that Plaintiff's counsel knew exactly what standard terms Trans Union was offering at the time he accepted the settlement offer as those terms have been the same in each agreement reached.  ECF No. 47-1 ¶¶ 2, 3.  All edits to the settlement agreement made by Plaintiff's counsel were based on "previous agreements," further confirming the terms were not new or unexpected.  ECF no. 38-2 at 9.  There is no dispute that Trans Union accepted all of Plaintiff's edits.  *Id*. at 11.  There are no subsequent communication by Plaintiff's counsel evidencing a single disagreement over any terms in the settlement agreement or credit file.   ECF No. 38-2.  Even now Plaintiff identifies no disputed terms.  ECF No. 48.

Addressing the credit file, Trans Union sent the link to Exhibit A on October 10, 2025.  ECF No. 38-2 at 11.  While on October 6, 2025, Plaintiff's counsel stated his client would review the file at the "end," the evidence shows such counsel did not communicate with Trans Union subsequent to delivery of the credit file and never disputed its contents after receipt.  ECF Nos. 38-2, 45.  The Court finds Plaintiff offers no evidence supporting the conclusion that the credit file (Exhibit A) was not what was intended, expected or inclusive of what was agreed upon.  ECF No. 45, *generally*.  There is no evidence that this document did not delete accounts (as explained by Trans Union) as promised.  ECF No. 47 at 4.  There is no evidence, even with Plaintiff's belated supplement (ECF No. 48), that any material terms in any document received by Plaintiff's counsel were ever in dispute.

      d.      <u>A Signed Agreement</u>.

The law is undisputed, a contract can be enforceable "even though the contract's exact language is not finalized until later." *First 100, LLC v. Omni Financial, LLC*, Case Nos. 2:16-cv-00099-RFB-CWH, 2:16-cv-00109-RFB-CWH, 2016 WL 2980673, at *11 (D. Nev. May 23, 2016), *quoting May*, 119 P.3d at 1257.  More precisely and applicable here, "[a] settlement agreement need not be memorialized by a signed release to be enforceable." *Peyman v. Rayan*, Case No. 2:09-CV-

01384-KJD, 2011 WL 4527932, at 1 (D. Nev. Sept. 28, 2011) (citing *May*, 119 P.3d at 1259). Plaintiff's arguments to the contrary are unpersuasive in this case.

The circumstances of this case establish that Plaintiff's counsel was well aware of the terms of the settlement he accepted on behalf of his client, including the amount his client would receive and other standard terms, and he confirmed a "deal" to settle Plaintiff's case with this knowledge on September 30, 2025. ECF No. 38-1 at 6-7. Plaintiff offers nothing that supports the contention that the terms in the settlement agreement or content of Exhibit A (the credit file) were different from what he knew or expected them to be when he told Trans Union they had "a deal." That Plaintiff's counsel did not have a written agreement at the time he made his "deal" with Trans Union does not change that an agreement was reached in the absence of writing when no material terms were in dispute. *May*, 119 P.3d at 1257. Exactly as is true here, a party's later refusal to execute a settlement agreement, after agreeing to the material terms, "does not render the settlement agreement invalid." *Id*. at 1256. Plaintiff's reliance on *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996), is misplaced as the parties in that case expressly agreed that they were not bound to a settlement until a formal agreement was signed. *Id*. at 315. There is no evidence that a similar condition was ever expressed by Plaintiff's counsel in any communication with Trans Union.

Based on all the information presented, and application of the law to the facts, the Court finds that Plaintiff entered into an enforceable settlement with Trans Union. No written agreement was necessary to finalize the parties' agreement.

**III.    Order**

Accordingly, and based on the foregoing, IT IS HEREBY ORDERED that Trans Union's Motion to Enforce Settlement (ECF No. 38) is GRANTED.

IT IS FURTHER ORDERED that Trans Union must pay to Plaintiff the settlement amount agreed upon no later than **March 2, 2026**, after which Trans Union **must** file a notice of settlement terms seeking dismissal of this case with prejudice, each party to bear its own fees and costs.

Dated this 31st day of January, 2026.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE